## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAVID DEAN CAREY** | * | |
| | * | |
| **v.** | * | **Civil Case No. ELH-13-684** |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

************

### REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment, and Mr. Carey's reply. ECF Nos. 13, 17, 18. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Mr. Carey's motion be denied.

Mr. Carey applied for Supplemental Security Income on February 13, 2009, alleging a disability onset date of August 1, 2007. (Tr. 20). He later amended the onset date to February 13, 2009. (Tr. 183). His claim was denied initially on July 29, 2009, and on reconsideration on April 9, 2010. (Tr. 75-80). An Administrative Law Judge ("ALJ") held a hearing on October 14, 2011, (Tr. 36-72), and subsequently denied benefits to Mr. Carey in a written opinion, (Tr. 17-35). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. Carey suffered from the severe impairments of affective disorder, anxiety disorder, degenerative joint disease in his left shoulder, and alcohol abuse. (Tr.

22).   However, the ALJ determined that Mr. Carey retained the residual functional capacity

("RFC") to:

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations:   He cannot reach above head level with his non-
> dominant upper extremity.   He can never climb ladders, ropes or scaffolds.   He
> must avoid concentrated exposure to dusts, fumes or smoke.   He must avoid
> unprotected heights.   He is limited to occasional contact with co-workers and the
> public.   He is limited to unskilled work.   The claimant's activities of daily living
> are mildly restricted, his social interactions are moderately restricted, his
> concentration, persistence and pace are moderately restricted and he has had no
> episodes of decompensation, for an extended duration.

(Tr. 24).   After considering testimony from a vocational expert ("VE"), the ALJ determined that

Mr. Carey could perform work existing in significant numbers in the national economy at both

the medium and light exertional levels, and that he was not therefore disabled.   (Tr. 29-30).

Mr. Carey disagrees.   He asserts several arguments in support of his appeal:   (1) that the

ALJ erred in evaluating his GAF scores; (2) that the ALJ assigned insufficient weight to the

opinions of four treating sources and assigned too much weight to the opinions of non-examining

physicians; and (3) that the ALJ failed to account for lifting restrictions resulting from his

shoulder impairment.   Each argument lacks merit.

Mr. Carey's first argument relates to the ALJ's analysis of his GAF scores.   Pl. Mot. 15-

19.   Mr. Carey objects to the ALJ's rejection of an assigned GAF score of 40 and his conclusion

that a GAF score of 50, which is the ceiling of the "severe" range, is "very close to a finding of

moderate symptoms."   (Tr. 29).   Regardless, it is well established that GAF scores are not

determinative of disability. *See, e.g., Davis v. Astrue*, Case No. JKS-09-2545, 2010 WL

5237850, at *3 (D. Md. Dec. 15, 2010) (citing Revised Medical Criteria for Evaluating Mental

Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746-01, 50764-65 (Aug. 21, 2000))

(noting that the SSA has specified that the GAF score does not correlate to severity requirements

in the mental disorders listings).   However, nothing prohibits an ALJ from considering GAF

scores as one component of a full analysis of the evidence of record. *See, e.g., Kozel v. Astrue,* No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) (citing *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x. 532, 535 (3d Cir. 2011); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)) ("[E]ven though a GAF score is not determinative of whether a person is disabled under SSA regulations, it may inform an ALJ's judgment.").  In this case, Mr. Carey's GAF scores comprised only one small part of the overall evidence relied upon in the ALJ's analysis of Mr. Carey's mental limitations.  The ALJ cited his Function Reports detailing his activities, his treatment records from examinations reflecting generally improved symptoms with medication and consistent unsuccessful attempts to find work, his records indicating an ability to study for a GED, and treatment notes showing a lack of consistent compliance with medications and some drug seeking behavior.  (Tr. 23-28).  In addition, while assigning little weight to the opinions of a treating physician, Dr. Storch, the ALJ did not rely exclusively on the GAF scores Dr. Storch found.  Instead, the ALJ cited specific treatment notes from Dr. Storch's records that suggested that Dr. Storch's extreme assessment of Mr. Carey's functional capacity was unwarranted.  (Tr. 28-29).  While I do not find any error in the ALJ's analysis of Mr. Carey's GAF scores, even if some error had been present, it would not warrant remand, because the remainder of the ALJ's mental health analysis is supported by substantial evidence.

Next, Mr. Carey argues that the ALJ erred by assigning too little weight to the opinions of his treating sources and too much weight to the opinions of non-examining physicians.  Pl. Mot. 19-35.  From the outset, it should be stated that this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Here, the ALJ's decision meets that standard.

The first source cited by Mr. Carey is his licensed clinical social worker, Ms. Elizabeth White, who provided him with regular mental health counseling.   (Tr. 329-32).   The ALJ correctly notes that, as a social worker, Ms. White is not considered to be "an acceptable medical source." (Tr. 28); *see* 20 C.F.R. § 416.913(a).   As such, Ms. White's opinion could not be solely relied upon to establish the existence of a medically determinable impairment.   SSR 06-03P, 2006 WL 2329939, at *3 (Aug. 9, 2006).   Moreover, the ALJ considered Ms. White's opinion and assigned it "little weight," not "no weight."   (Tr. 28).   In fact, Ms. White's opinion echoes the ALJ's RFC assessment in many ways, as it notes that the most significant issues for Mr. Carey are in the areas of work stresses and social functioning.   (Tr. 329-31).   Accordingly, the RFC assessment limits Mr. Carey to unskilled work, and limits his contact with co-workers and the public.   (Tr. 24).   The ALJ further noted that Ms. White's opinion that Mr. Carey was disabled was undermined by the medical evidence showing Mr. Carey's repeated efforts to seek employment.   (Tr. 28-29).   Contrary to Mr. Carey's assertion, the ALJ did not rely on his unsuccessful work attempt to discredit Ms. White's opinion.   Pl. Mot. 23-25.   In fact, the ALJ made no reference, in connection with Ms. White's opinion, to Mr. Carey's brief period of employment in 2010.   The ALJ's analysis instead focused on Mr. Carey's persistent efforts to find employment, suggesting that his social functioning impairments were not as great as believed by Ms. White.   In light of the evidence cited by the ALJ, the assignment of little weight to Ms. White's opinion was supported by substantial evidence.

Mr. Carey next protests the assignment of weight to the opinions of three treating physicians:   Drs. Storch, Bastein, and Kenna.   Pl. Mot. 25-34.   A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined

by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)).   The ALJ provided the appropriate analysis with respect to each physician's opinion.  As noted above, in considering the opinion of Dr. Storch, the ALJ provided specific examples of Dr. Storch's own treatment notes that were "incongruous" with the opinion he rendered.  *See* (Tr. 28-29) ("For example, Dr. Storch's medical notes reflects the claimant's reports that his 'medication work' (Exhibit 12F/3), and 'I feel good, anxiety all gone and depression better too' (Exhibit 12F/21).").  The ALJ also noted that Mr. Carey had reported to Dr. Storch that he was reading a GED book and contemplating starting his own business.  *Id.* The ALJ's conclusion that those notes undermined Dr. Storch's suggestion that Mr. Carey suffered from extreme difficulties in social functioning and marked deficiencies in concentration, persistence, and pace, then, is supported by substantial evidence.

The final two physicians, Drs. Bastein and Kenna, both work at Peace of Mind Counseling.  That institution provided a letter stating that its policy is not to release treatment notes.  (Tr. 513).  While Mr. Carey correctly notes that there may, in fact, have been examination findings to support the physicians' opinions, in the absence of the provision of the treatment records, the ALJ could not assess whether those opinions were supported or unsupported. *See generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").  I agree with Mr. Carey's contention that the ALJ's assertion that Dr. Bastein's assessment "appears to have been based solely on the claimant's subjective statements," (Tr. 29), is an unfair conclusion.  Without the benefit of treatment notes, the ALJ cannot determine the basis for any of the conclusions reached by Drs. Bastein and Kenna.  However, the mere fact that two physicians from the same practice issued similar opinions, which were consistent with one another but inconsistent with the treatment notes from other

physicians present in the file, does not increase the reliability of those opinions.  I find no fault, therefore, with the assignment of little weight in light of the absence of factual support for the opinions.

Mr. Carey also suggests that the opinions of the non-examining physicians should not have been afforded substantial weight.  *Id.*  Once again, I concur with Mr. Carey's position that the ALJ's statement that "the state agency medical opinions are given substantial weight to the extent they support a finding of not-disabled" is both conclusory and unhelpful.  *Id.*  However, I disagree with Mr. Carey's position that the state agency physicians' opinions should be afforded less weight simply because they did not consider subsequent developments in the record.  The evidence cited by the ALJ, including the results of a February 2010 consultative examination by a state agency physician, provided substantial evidence on which the non-examining physicians rested their opinions.  (Tr. 26, 304-09).  Ultimately, while the ALJ did not provide a well-written justification for the assignment of weight to the state agency physicians' opinions, the justification can be readily ascertained from the remainder of the opinion, where the ALJ cited treatment records showing only mild to moderate symptoms, relatively effective control of symptoms by medication, some evidence of non-compliance with a treatment regime, and participation in daily activities.  (Tr. 26-27).  Accordingly, I find no error in the assignment of weight to the state agency doctors.

Mr. Carey's final argument is that the ALJ's RFC assessment, which stated that he could perform work "at all exertional levels," did not consider lifting restrictions resulting from his shoulder injury.  Pl. Mot. 35-37.  Specifically, Mr. Carey posits, work at the "very heavy" exertional level can involve lifting of objects weighing more than 100 pounds, with frequent lifting and carrying of objects weighing 50 pounds or more.  *See* 20 C.F.R. § 416.967(e).  Work at the "heavy" exertional level involves lifting up to 100 pounds, with frequent lifting and

carrying of objects weighing up to 50 pounds. *See* 20 C.F.R. § 416.967(d). Mr. Carey, citing record evidence noting that he cannot lift his left arm fully above his head, suggests that the record fails to support his ability to lift weights at those levels. Pl. Mot. 37 (citing Tr. 488, 493). However, there are no lifting limitations evident from the medical record. Moreover, there are no indications that Mr. Carey would have any restrictions lifting with his right arm. The jobs identified by the VE included several at the "light" exertional level, which requires lifting "no more than 20 pounds at a time." *See* 20 C.F.R. 416.967(b); (Tr. 30). While I do not find evidence in the record to substantiate an inability to perform very heavy or heavy work, even if Mr. Carey's left shoulder injury imposes such a limitation, the error would be harmless because he is capable of the light jobs identified by the VE.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 17); and

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 13) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: April 28, 2014                                    _____/s/_____

                                                         Stephanie A. Gallagher
                                                         United States Magistrate Judge